CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA. - FILED

FEB 0 4 2009

BY: JOHN F. CORCORAN, CLERK
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MICHAEL L. ELLIS, | ) |
| Plaintiff, | ) Case No. 7:08-CV00642 |
| v. | ) |
| | ) MEMORANDUM OPINION |
| OFFICER ELDER, ET AL., | ) |
| | ) By: Glen E. Conrad |
| Defendant(s). | ) United States District Judge |

Plaintiff Michael L. Ellis, a Virginia inmate proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983, with jurisdiction vested pursuant to 28 U.S.C. § 1343. In his complaint, plaintiff alleges that a corrections officer at Buckingham Correctional Center "sexually harassed" him when the officer "groped the right side of [his] buttock" during a pat down search for pill call. When plaintiff complained, defendant allegedly retaliated by ordering plaintiff to undergo a strip search for the next pill call. Upon consideration of the complaint, the court finds that this action must be dismissed without prejudice, pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim.[1]

## Background

Ellis alleges the following events from which his claims arise. On September 13, 2008, Officer Elder came to the prison kitchen where Ellis worked to send Ellis for pill call. In the course of patting Ellis down, Elder "groped" the inmate's right buttock. Ellis told Elder that he did not appreciate the way the officer had performed the pat down, and Elder told him, "Just go to pill call." Ellis then told several other officers about Elder's actions, but they took no action. At the next pill call, Ellis asked a higher ranking officer to watch Elder do the pat down on Ellis, and the officer sent someone else to do the pat down instead. After Ellis first complained about the "groping" incident,

---

[1] Under § 1915A(b)(1), the court may dismiss an action filed by a prisoner against government officials at any time as frivolous, malicious or for failure to state a claim upon which relief may be granted.

Elder and Ellis met with Lt. Catron about the inmate's complaint. Elder explained that he had grabbed Ellis's buttock because he believed that Ellis had chicken patties in his rear pocket. Catron did nothing to resolve the situation, and Ellis later learned that the kitchen had not served chicken patties on September 13, 2008. Elder, however, told other officers that he had searched Ellis looking for chicken patties.

On two occasions after Ellis filed his inmate complaint form, Elder took the "evening shift" into the men's room at pill call time and ordered them to pull up their tops and T-shirts and pull down their pants and boxers for a visual strip search. Ellis asserts that prison policy required two officers to be present during any strip search. The morning shift inmates informed Ellis that they did not have to undergo a strip search for pill call, but were merely patted down instead. Ellis believes the strip search was in retaliation for his complaints about Elder's earlier "groping" behavior. He stopped going to pill call if Elder was working. When he complained to higher ranking officers about the strip searches, they suggested that he could quit his kitchen job.

After the September 13, 2008 incident, Ellis called a "sexual harassment hotline" and reported Elder's conduct. He also filed an informal complaint about it. Institutional Investigator Harper came to interview Ellis and told him that he would have to wait to file a grievance until the investigation was completed. Ellis learned in early November 2008 that the investigation had been completed on October 15, 2008. He immediately filed a grievance, but it was rejected as untimely filed, because he had not submitted it within thirty (30) days of the date of the September 13, 2008 incident. Ellis states that he appealed this intake decision, resulting in another finding that his grievance was untimely filed. Harper allegedly told Ellis and another inmate who made a similar complaint about Elder that he believed their stories.

Ellis brings this lawsuit against Elder for sexual harassment and retaliation. He also sues several supervisory officials who received his written and verbal complaints about Elder, but failed to take any action against the officer. As relief, he seeks monetary damages, a written apology from Elder, and removal of Elder from his job at the prison.

## Discussion

### A. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). It is well established that the exhaustion requirement is mandatory, Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 677 (4th Cir. 2005), and that the requirement "applies to all inmate suits about prison life." Porter v. Nussle, 534 U.S. 516, 532 (2002). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 90 (2006). Failure to file on time, according to the agency's deadlines, is not "proper exhaustion." Id. While failure to exhaust as required under § 1997e(a) is an affirmative defense, the court may raise the issue of exhaustion on its own motion and "in the rare case where failure to exhaust is apparent from the face of the complaint," may summarily dismiss a complaint on that ground. Anderson, 407 F.3d at 682.

It is clear from the face of Ellis' submissions that he did not comply with the prison grievance procedures regarding his claims of sexual harassment and retaliation. His submissions indicate that the established grievance procedures require an inmate to file a grievance within thirty (30) days from the date on which the inmate's claim arose. Ellis' claims are based on events that occurred on September 13, 2008. Yet, he admits that he did not file a regular grievance about the incidents until mid-November 2008, more than thirty days later. At both levels of review available to Ellis, prison officials ruled that his grievance was untimely filed under the procedures.

The court gave Ellis an opportunity to provide more information about his efforts to exhaust. In his response, he complained that Investigator Harper misinformed him about the need to wait to file a grievance until the investigation was completed. In reliance on this statement, Ellis alleges, he did not file a regular grievance until after he learned that the investigation was over. By then, the grievance period had passed. Although Ellis failed to exhaust properly as required under § 1997e(a),

Case 7:08-cv-00642-GEC-mfu Document 9 Filed 02/04/09 Page 3 of 7 Pageid#: 42

Woodford, 548 U.S. at 90, Ellis could conceivably prove that Harper's misinformation about waiting to grieve until the investigation ended is grounds for equitable tolling of the grievance filing period. See, e.g., Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000) (finding in habeas context that equitable tolling is only available when inmate diligently pursues his claims and extraordinary circumstances beyond his control prevented timely filing of remedies). Accordingly, in an abundance of caution, the court will not summarily dismiss the case under § 1997e(a) for failure to exhaust administrative remedies. However, because Ellis' claims fail on the merits, no additional development of the exhaustion issue is necessary.

### B. Insufficient Allegations of Sexual Abuse

A prison guard may violate the Eighth Amendment by sexually harassing or sexually assaulting an inmate. Sexual assault is "not a legitimate part of a prisoner's punishment, and the substantial physical and emotional harm suffered by a victim of such abuse are compensable injuries" under § 1983. Berryhill v. Schriro, 137 F.3d 1073, 1076 (8th Cir. 1998). To be actionable, the alleged sexual contact must be incompatible with "contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 32 (1993); Schwenk v. Hartford, 204 F.3d 1187, 1196-97 (9th Cir. 2000) (finding that sexual assault of inmate by prison guard without lasting physical injury may be actionable as "offensive to human dignity"). In stating such a claim, however, the inmate must allege facts on which he could prove that the unwanted touching had some sexual aspect to it; his own perceptions alone that the contact was of a sexual nature are not sufficient. Berryhill, 137 F.3d at 1076-77 (finding that civilian maintenance worker's brief touch to inmate's buttocks and not accompanied by any sexual comments or banter was not actionable as a sexual assault claim under § 1983); Hughes v. Smith, 237 Fed. App'x 756, 759 (3d Cir. 2007) (finding no Eighth Amendment violation arising from allegation that correctional officer, who had previously made sexual comments to the plaintiff inmate, allegedly touched plaintiff's testicles through his clothing during a single pat-down frisk) (citing Bradley v. United States, 299 F.3d 197, 203 (3d Cir. 2002) (holding that pat down search performed on woman by female United States Customs Service did not violate Fourth

Amendment; inspector had allegedly used fingers to "inappropriately push" on plaintiff's breasts and outer portions of her genitalia through plaintiff's dress).

Moreover, the United States Supreme Court has clearly upheld as constitutional random, visual strip searches of inmates, whether convicted felons or pretrial detainees, after they return from opportunities to obtain contraband. Bell v. Wolfish, 441 U.S. 520 (1979). In Bell, the Court examined a procedure under which inmates were required to expose their genitals and spread their buttocks for a visual inspection by correctional officers after every contact visit with any person from outside the institution. Id. at 558. While the Court did not deny that inmates retain some right of privacy under the Fourth Amendment, a balancing of inmates' privacy rights against the interests of the state in preserving prison security, such as in finding contraband, weighed in favor of the state's security interests. Id. The Court found that so long as a search met this balancing test, it was reasonable and did not violate the Fourth Amendment rights of inmates. Id.

Under these principles, Ellis fails to allege facts stating any constitutional claim as to the so-called "sexual assault" by Officer Elder. Elder and Ellis are both male. Moreover, Ellis does not allege that Elder touched his genitals at all or that the officer made any more contact with his buttock than was reasonably necessary to ensure that the rear pocket was empty. Such an action is reasonably related to a legitimate prison interest in preventing inmates from secreting contraband in their clothing. Officials could well have had reasonable suspicion that evening shift kitchen workers might be pocketing such food items from storage, whether or not chicken patties were on the menu that night. Moreover, other than his own perceptions, Ellis fails to allege facts indicating that Elder intended the pat down contact as any sort of sexual proposition or harassment. Accordingly, the court is satisfied that Ellis cannot prove facts consistent with his current allegations that state any constitutional claim arising from the pat down search.

Similarly, Ellis fails to state facts indicating that the visual strip search of the evening shift of kitchen workers was unreasonable. This search was not physically invasive; the officers visually watched for contraband as the inmates removed parts of their clothing. The search was performed

in the restroom away from view of other inmates or staff so as to expose inmates' private parts no more than reasonably necessary to ensure that they carried no contraband. Finally, although a visual strip search such as the one Ellis describes would be constitutional in the prison setting even if performed as a random security check, officers had a stated, logical reason for searching Ellis and his fellow evening shift kitchen workers as they did. The court finds no constitutional claim arising from Ellis' allegations concerning the strip search.

## C. No Retaliation Claim

To state a prima facie claim of retaliation actionable under § 1983, an inmate must allege facts showing that his exercise of a constitutional right was a substantial factor motivating the retaliatory action. See, e.g., American Civil Liberties Union v. Wicomico County, 999 F.2d 780, 785 (4th Cir. 1993) (citing Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287 (1977)); Wagner v. Wheeler, 13 F.3d 86, 90-91 (4th Cir. 1993). "Temporal proximity" between the inmate's protected activity and the allegedly retaliatory, official action "is simply too slender a reed on which to rest" a § 1983 retaliation claim. Wagner, 13 F.3d at 91. Moreover, the inmate must allege that, as a result of the retaliatory action, he suffered some adverse impact on the continued exercise of his constitutional rights. Wicomico County, 999 F.2d at 786 (finding that mere inconvenience in exercise of constitutional rights not adverse enough to constitute actionable retaliation). Plaintiff must allege specific facts supporting his claim of retaliation; bare assertions of retaliation do not establish a claim of constitutional dimension. Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). Furthermore, inmates do not have a constitutionally protected right to a prison grievance procedure or to participation in an established grievance procedure. Id. at 75.

The allegations in the Ellis complaint do not give rise to any claim of retaliation actionable under § 1983. First, in filing informal inmate complaint forms and grievances about the pat down and the strip search, Ellis was not exercising any constitutionally protected right. Second, other than the fact that the strip search occurred close in time after the pat down search, Ellis fails to allege facts supporting his assertion that retaliation for his complaints, rather than legitimate security concerns,

motivated Elder to strip search the entire evening shift. Finally, Ellis fails to demonstrate that these incidents chilled his inclination or ability to exercise constitutionally protected rights. The court will dismiss all claims arising from the pat down search and the strip search allegations pursuant to § 1915A(b)(1), for failure to state any claim actionable under § 1983.[2] An appropriate order shall be issued this day.

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this memorandum opinion and the accompanying order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 4th day of February, 2009.

*[signature]*
United States District Judge

---

[2] To the extent that Ellis intends to bring related claims under state law related to the alleged invasions of his privacy, the court declines to exercise supplemental jurisdiction over any such claim, pursuant to 28 U.S.C. § 1367(c).